TRACY L. WILKISON
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
MELISSA BRIGGS (Cal. Bar No. 320697)
Assistant United States Attorney
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4600
    Facsimile: (213) 894-6165
    E-mail: Melissa.Briggs2@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Elie Waknine,<br><br>Defendant. | Case No. 8:21-cv-01398<br><br>Complaint to reduce federal penalty assessment to judgment |

The United States of America alleges as follows:

## I. General Allegations

### A. Jurisdiction and Venue

1.     This is a civil action to reduce to judgment against defendant Elie Waknine ("Waknine") an unpaid agreed-to federal penalty assessment, interest thereon, and late payment penalties as provided by law.

1

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355(a) because this action arises under the laws of the United States and because the United States is the plaintiff.

3.     This action is commenced at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, pursuant to 31 U.S.C. § 3711(g)(4)(C), and in accordance with 31 U.S.C. § 5321(b)(2).

4.     Venue for this action is within the Central District of California under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Waknine resides in Huntington Beach, California, in this district, and because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## B. Statutory and Regulatory Provisions

5.     Citizens of the United States are required to report to the Internal Revenue Service certain activity with foreign financial agencies for each year in which the activity occurs.  31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

6.     One such activity is "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country."  31 C.F.R. § 1010.350(a).

7.     The form that needs to be completed for this annual reporting requirement is the Report of Foreign Bank and Financial Accounts (FBAR).

8.     For calendar years before 2017, the FBAR report for foreign financial accounts exceeding $10,000 maintained during a calendar year was due by June 30 of the following calendar year.  31 C.F.R. § 1010.306(c).

9.     Civil penalties can be assessed against an individual who, whether willfully or non-willfully, fails to comply with these reporting requirements.  31 U.S.C. § 5321(a)(5)(A).

2

10.     For willful violations, the penalty assessed is the greater of $100,000 or 50% of the balance in the foreign financial account at the time of the violation.  31 U.S.C. § 5321(a)(5)(C)(i).

## II. Claim for Relief: Reduce FBAR Penalty Assessment to Judgment

11.     On August 28, 2018, Waknine was charged via information with willfully subscribing to a false income tax return for the 2007 income tax year in violation of 26 U.S.C. § 7602(1) in case number 8:18-CR-00180-DOC in this Court.

12.     On August 29, 2018, Waknine entered into a plea agreement in his criminal case which was filed with this Court as docket number 5 in 8:18-CR-00180-DOC on August 29, 2018.  A copy of the plea agreement as filed with the Court is attached as Exhibit A ("Plea Agreement").

13.     As a part of that agreement Waknine agreed that "in order to resolve [his] civil liability for failing to report all foreign financial accounts on Reports of Foreign Bank and Financial Accounts, TD F 90-22.1 (now FinCEN Forms114 ) and other foreign information reporting obligations under the United States law, for tax years 2004 through 2013, defendant will pay a fifty percent penalty with respect to the funds held in his undeclared foreign financial accounts for the one year with the highest aggregate balance in all of the accounts for calendar years 2004 through 2013, and agrees to pay this sum to the United States Treasury through the Department of Justice, Tax Division."  Plea Agreement at page 8, ¶ 5(r).

### A.  Facts Regarding Waknines's Willful Noncompliance with FBAR Reporting Requirements

14.     In the plea agreement, Waknine agreed to the following facts.  These facts demonstrate that Waknine willfully failed to report his foreign bank accounts in violation of 31 U.S.C. § 5314. All of these facts are quoted directly from his plea agreement that both Waknine and his attorney signed.  *See* Plea Agreement at 24-25.

15.     "ELIE WAKNINE, ('Waknine' or 'the defendant') was born in Casablanca, Morocco in 1949.  From in or about 1966 to 1971, Waknine lived in Israel.  Waknine

then immigrated to the United States in 1971 and became a U.S. citizen in 1982. Waknine is a citizen of the United States, Morocco, and Israel." Plea Agreement at 27 ¶ 1.

16. "From in or about 1972 until 1985, Waknine worked for an electronics company. From in or about 1985 until 2004, Waknine operated his own clothing business, and from in or about 1995 through 2003, Waknine also worked in a dental supply business. From in or about 2004 through approximately 2011, Waknine was retired but continued to do limited work in the closing business." Plea Agreement at 27 ¶ 2.

17. "Since in or about 1991, Waknine has lived in Huntington Beach, California which is located in the Central District of California." Plea Agreement at 27 ¶ 3.

<u>"Waknine's Unreported Foreign Bank Accounts (1994-2011)"</u>

18. "In or about 1994, Waknine received an inheritance from his family in Morocco, which he used to open a bank account at Bank Leumi in Israel (the 'Bank Leumi Israel Account'). He opened the account with an initial deposit of approximately $50,000. For the next several years, he deposited inheritance money in the account, with deposits totaling approximately $4 million." Plea Agreement at 27 ¶ 4.

19. "Waknine concealed his Bank Leumi Israel Account, and the income derived from this account, from the Internal Revenue Service (IRS) and from his tax return preparers at all times prior to the closing of this account in 2011, including through the following:"

a. "Waknine opened and maintained the account using the code name 'Jonathan Co.' for purposes of keeping the account secret."

b. "Waknine paid an additional fee so that Bank Leumi Israel would not mail correspondence to him in the U.S. regarding his account, known as the 'Hold Mail' option."

c. "Waknine signed under penalty of perjury and filed false individual income tax returns, Forms 1040, which falsely claimed that Waknine did not have a

4

financial interest in or signature authority over a financial account located in a foreign country and did not declare income derived from his Bank Leumi Israel Account."

    d.  "Annually, Waknine provided bank account records to his tax return preparer, but did not provide records from or notify his return preparer of his Bank Leumi Israel account."  Plea Agreement at 27-28 ¶ 5.

20.    "In or about 2004, Waknine opened a second foreign bank account at SwissBank #1 located in Switzerland (the 'Swiss Bank Account'), funded with approximately $1.5-2.0 million from his Bank Leumi Israel Account."  Plea Agreement at 28 ¶ 6.

21.    "Waknine concealed his Swiss Bank Account, and the income derived from this Account, from the IRS and from his tax return preparers at all times prior to the closing of this account in or about 2011, including through the following;"

    a.  "Waknine signed blank account opening documents on the instructions of Swiss Bank #1, which the bank then used to open and maintain his account using an entity name, 'Sorn Investments Inc.,' which was an entity incorporated in Panama through a Panamanian law firm."

    b.  "Waknine requested that Swiss Bank #1 not mail correspondence to him in the U.S. regarding his account, known as the 'Hold Mail' option."

    c.  "Waknine signed under penalty of perjury and filed false individual income tax returns, Forms 1040, which falsely claimed that Waknine did not have a financial interest in or signature authority over a financial account located in a foreign country and did not declare income derived from his Swiss Account."

    d.  "Annually, Waknine provided bank account records to his tax return preparer, but did not provide records from or notify his return preparer of his Swiss Bank Account." Plea Agreement at 28-29 ¶ 7.

22.    "On or about April 15, 2008, Waknine made, subscribed, signed, and filed a 2007 federal U.S. Individual Income Tax Return, Form 1040, which was false as to a

5

material matter, as it falsely stated that the defendant did not have financial interest [sic] in or signature authority over any foreign financial accounts, and failed to disclose the income that the defendant received from his foreign financial accounts.  The false 2007 tax return contained a written declaration that it was made under the penalties of perjury, the defendant did not believe the tax return to be true and correct as to every material matter, and the defendant willfully subscribed to the tax return with the specific intent to violate the law."  Plea Agreement at 29-30 ¶ 8.

23.    "A 'back-to-back loan' was a mechanism by which a foreign accountholder received a 'loan' in the United States which was collateralized by an undeclared foreign account.  Account holders were generally prohibited from drawing down the account below the amount owed on the 'loan' in the United States, thereby in effect transferring the use of the funds from the foreign account to the United States without having to wire the funds to an account in the United States.  The foreign account balance would include the encumbered funds, even though they were not available to the US taxpayer, except in the form of the 'loan' in the United States.  This allowed an owner of an undeclared foreign account to enjoy the economic benefits of the funds in the United States without formally repatriating the funds or creating a paper trial that could potentially disclose the existence of the undeclared foreign account to U.S. authorities."  Plea Agreement at 30 ¶9.

24.    "In 2009, at the suggestion of Bank Leumi Israel, Waknine applied for and received a back-to-back loan from Bank Leumi USA in the amount of $500,000, which was secured by Waknine's account at Bank Leumi Israel.  In order to secure a loan, Waknine agreed to transfer approximately $150,000 of his investment portfolio with another United States bank to Bank Leumi USA."  Plea Agreement at 30 ¶ 10.

25.    "The proceeds of the back-to-back loan were used to pay off $500,000 of a mortgage loan on Waknine's personal residence at another bank in the United States."  Plea Agreement at 30 ¶ 11.

26.     "In 2010, Waknine extended his back-to-back loan with Bank Leumi USA through July 2012."  Plea Agreement at 30 ¶ 12.

27.     "In June 2011, Bank Leumi Israel informed Waknine that he would no longer be able to maintain his account under the code name Jonathan Co."  Plea Agreement at 31 ¶  13

28.     "In September 2011, Waknine declined to sign a declaration provided by Bank Leumi Israel stating that the existence of, and any income derived from, the account maintained at Bank Leumi Israel had been property reported to U.S. tax authorities." Plea Agreement at 31 ¶ 14.

29.     "In November 2011, Wakinine requested that his Bank Leumi Israel account be closed.  Waknine used the back-to-back loan from Bank Leumi USA to indirectly repatriate $500,000 from his Bank Leumi Israel account by pocketing the proceeds of the loan in the United States and allowing Bank Leumi Israel to deduct a corresponding amount from his Bank Leumi Israel account."  Plea Agreement at 31 ¶ 15.

30.     "Waknine attempted to conceal the remaining account balance of approximately $2.4 million by requesting in writing that it be transferred by personal checks to Waknine's home address in the United States."  Plea Agreement at 31 ¶ 16.

31.     "From 2006-2011, Waknine received unreported income on his Bank Leumi Israel account in approximately the following amounts:"

| YEAR | Bank Leumi Israel Income |
|------|--------------------------|
| 2006 | $140, 892 |
| 2007 | $157,824 |
| 2008 | $119,980 |
| 2009 | $63,449 |

| 2010 | $13,205[1] |
| 2011 | $10,946[2] |
| **TOTAL** | $506,296 |

Plea Agreement at 31-32 ¶ 17.

"Waknine's Unreported Foreign Bank Accounts (2011-2015)"

32.   "Still wishing to avoid disclosure of the foreign funds from his now-closed Bank Leumi Israel account, in December 2011 Waknine used the $2.4 million he received from closing the account to open a new foreign bank account at another bank in Israel (the Second Israeli Bank Account"). Waknine opened the account in person at a branch in Netanya, Israel." Plea Agreement at 32 ¶ 18

33.   "Waknine concealed this Second Israeli Bank Account from the IRS and from his tax return preparers from its opening until in or about October 2015, including through the following affirmative acts:"

   a.  "Waknine opened and maintained the account using his Israeli and Moroccan passports and addresses."

   b.  "Waknine signed under penalty of perjury and filed individual income tax returns, Forms 1040, for tax years 2011-2013, which falsely claimed that Waknine did not have a financial interest in or signature authority over a financial account located in a foreign country. These tax returns did not declare any income derived from his Second Israeli Bank Account."

---

[1] "Based on information currently available to the IRS, the unreported Bank Leumi Israel income for 2010 did not result in a tax loss for 2010."

[2] "Based on the information currently available to the IRS, the unreported Bank Leumi Israel income for 2011 did not result in a tax loss for 2011."

    c.  "In 2012 and 2014, documents created by his tax return preparer reflect that Waknine was asked by his tax return preparer whether he had any foreign bank accounts, and Waknine responded in the negative."

    d.  "Annually, Waknine provided bank account records to his tax return preparer, but did not provide records from or notify his return preparer of his Second Israeli Bank Account."

    e.  "In 2012, 2013, and 2015, Waknine's tax return preparer also provided email reminders prior to the June 30 deadline that foreign bank accounts for the prior year were required by law to be disclosed to the U.S. Treasury Department."

    f.  "When Waknine ultimately disclosed the account to his tax return preparer at a meeting in October 2015, notes of the meeting taken by the tax return preparer reflect that Waknine claimed that his name was not on the account prior to 2014."

Plea Agreement at 32-33 ¶ 19.

34.    "Meanwhile, in approximately 2011, Waknine closed his Swiss Bank Account.  Still wishing to avoid disclosure of the foreign funds from his now closed Swiss Bank Account, in 2011 Waknine used the remaining balance of approximately $1.4 million to open an account at a bank in France (the 'French Bank Account')." Plea Agreement at 33 ¶ 20.

35.    "Waknine concealed this French Bank Account from the IRS and from his tax return preparers from its opening until in or about October 2015, including through the following:"

    a.  "Waknine opened and maintained the account using his Moroccan address and passport."

    b.  "Waknine signed under penalty of perjury and filed individual income tax returns, Forms 1040, for tax years 2011-2013, which falsely claimed that Waknine did not have a financial interest in or signature authority over a

9

financial account located in a foreign country.  These tax returns did not declare any income derived from his French Bank Account."

c.  "In 2012 and 2014, documents created by his tax return preparer reflect that Waknine was asked by his tax return preparer whether he had any foreign bank accounts, and Waknine responded in the negative."

d.  "Annually, Waknine provided bank account records to his tax return preparer, but did not provide records from or notify his return preparer of his French Bank Account."

e.  "In 2012, 2013, and 2015, Waknine's tax return preparer also provided email reminders prior to the June 30 deadline that foreign bank accounts for the prior year were required by law to be disclosed to the U.S. Treasury Department."

f.  "When Waknine ultimately disclosed the account to his tax return preparer in October 2015, contemporaneous notes taken by the tax return preparer reflect that Waknine claimed that his name was not on the account prior to 2014."

Plea Agreement at 33-34 ¶ 21.

**B. Facts Regarding the FBAR Agreement Signed by Waknine and His Counsel Agreeing to the FBAR Penalty Amounts at Issue Here and Waiving all Defenses to this Action**

36.     Waknine and his attorney signed an "FBAR Agreement" with the Commissioner of Internal Revenue dated May 13, 2019.  A copy of the agreement, redacted to protect personal identifying information, is attached at Exhibit B ("FBAR Agreement").

37.     In the agreement, Waknine and his counsel agreed that Waknine had FBAR reporting requirements in the 2004 through 2013 calendar year.

38.     Waknine and his counsel also "agree[d] that there is a penalty due from Waknine under 31 U.S.C. 5321(a)(5) [the willful FBAR statute] in the amount of $2,407,624 for failure to file FBARs for calendar years 2004 through 2013."  FBAR Agreement at 1 ¶ 7.

39.     Waknine and his counsel agreed that the penalty "shall be assessed for calendar year 2007."  FBAR Agreement at 1 ¶ 8.

40.     Waknine waived "any and all defenses to the assessment and collection of the FBAR penalty . . . including any defense based on the expiration of the period of limitations on the assessment or collection of penalties and interest."  FBAR Agreement at 2 ¶ 9.

41.     Waknine also signed Form 13449 Agreement to Assessment and Collection of Penalties, in which he agreed to the assessment of the $2,407,624 in penalties and dated the form June 10, 2019.  His attorney also signed and dated the form June 14, 2019.

42.     On September 3, 2019, the IRS assessed willful FBAR penalties against Waknine for the 2007 income tax year totaling $2,407,624.

43.     On September 12, 2019, notice and demand for payment was sent to Waknine.

44.     Despite timely notice and demand for payment of the FBAR assessment, Waknine has failed to pay in full the agreed-to FBAR penalty.

45.     The only payment that Waknine has made towards his FBAR penalty was the $600,000 payment made on May 3, 2019, prior to this Court's sentencing in his criminal case on May 19, 2019.

46.     Waknine has failed to pay the agreed-to FBAR penalty despite the fact that his attorneys repeatedly represented to this Court during the sentencing phase of Waknine's criminal case that his payment of the agreed-to FBAR penalty per the terms of his plea agreement was a factor this Court should consider in determining Waknine's sentence.  *See* 18-CR-00180, Response to Government's Sentencing Memorandum, Doc. 26 at 3, ECF Page ID 145 ("the $2.4 million FBAR penalty will wipe out most of Mr. Waknine and his wife's retirement savings, which financial devastation provides specific deterrence, general deterrence, and just punishment on its own."); 18-CR-00180, Minutes of Sentencing Hearing, May 13, 2019, page 7, lines 8-16 ("But in terms of

11

general deterrence . . . taking half of the inheritance, is a very severe result, whatever you wanna call it, that Mr. Waknine certainly is going to feel, and anyone looking at this cases is going to recognize.")

47.     Interest and penalties have accrued on the assessed FBAR penalties as provided by law.

48.     As of August 15, 2021, Waknine was liable to the United States for $2,051,331.33 which is comprised of the FBAR penalty, interest, and penalties for late payment under 31 U.S.C. § 3717(e)(2) calculated as follows:

| | |
|---|---|
| FBAR penalty balance: | $1,807,624 |
| 6% delinquency through 8/15/2021: | $208,892 |
| 1% interest through 8/15/2021 | $34,815.33 |

### III. Relief Requested

WHEREFORE, the United States of America requests the following relief from the Court:

A.     Enter judgment in favor of the United States of America and against Waknine in the amount of $2,051,331.33, plus all statutory accruals, including interest and penalties, plus costs and expenses;

B.     Grant the United States its costs incurred in bringing this action; and

C.     Order any further relief the Court deems just and appropriate.


Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division


Dated:  August 27, 2021          /s/ Melissa Briggs
MELISSA BRIGGS
Assistant United States Attorney

Attorneys for the United States of America

12

# EXHIBIT A

FILED

1  NICOLA T. HANNA
   United States Attorney                      2018 AUG 29  PM 2: 26
2  THOMAS D. COKER
   Assistant United States Attorney            CLERK U S DISTRICT COURT
3  Chief, Tax Division                          CENTRAL DIST OF CALIF.
   ROBERT F. CONTE                                   LOS ANGELES
4  Assistant United States Attorney
   Deputy Chief, Tax Division                  BY _____
5        United States Attorney's Office
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-6607
7        Facsimile: (213) 894-0115
         E-mail:   robert.conte@usdoj.gov
8  ELIZABETH C. HADDEN
   Assistant Chief (CA Bar No. 212986)
9  ERIC C. SCHMALE
   Trial Attorney (DC Bar No. 1013508)
10 Tax Division, Western Criminal Enforcement Section
   United States Department of Justice
11       601 D Street NW
         Washington, DC 20004
12       Telephone: (202) 514-5085
         Facsimile: (202) 514-9623
13       E-mail:   elizabeth.c.hadden@usdoj.gov
                   eric.c.schmale@usdoj.gov
14 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
15
                    UNITED STATES DISTRICT COURT
16
              FOR THE CENTRAL DISTRICT OF CALIFORNIA
17
   UNITED STATES OF AMERICA,          No. CR 18- SA 18-CR-180
18
              Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
19                                    ELIE WAKNINE
              v.
20
   ELIE WAKNINE,
21
              Defendant.
22

23
        1.    This constitutes the plea agreement between ELIE WAKNINE
24
   ("defendant") and the United States Attorney's Office for the Central
25
   District of California and the United States Department of Justice,
26
   Tax Division (together, "the USAO") in the above-captioned case.
27
   This agreement is limited to the USAO and cannot bind any other
28

                                                            15966771.10

1  federal, state, local, or foreign prosecuting, enforcement,

2  administrative, or regulatory authorities.

3                    DEFENDANT'S OBLIGATIONS

4      2.   Defendant agrees to:

5          a.   Give up the right to indictment by a grand jury, and

6  at the earliest opportunity requested by the USAO and provided by the

7  Court, to appear and plead guilty to a one-count Information charging

8  a violation of 26 U.S.C. § 7206(1) in the form attached to this

9  agreement or a substantially similar form.

10          b.   Not contest facts agreed to in this agreement.

11          c.   Abide by all agreements regarding sentencing contained

12  in this agreement.

13          d.   Appear for all court appearances, surrender as ordered

14  for service of sentence, obey all conditions of any bond, and obey

15  any other ongoing court order in this matter.

16          e.   Not commit any crime; however, offenses that would be

17  excluded for sentencing purposes under United States Sentencing

18  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

19  within the scope of this agreement.

20          f.   Be truthful at all times with Pretrial Services, the

21  United States Probation Office, and the Court.

22          g.   Pay the applicable special assessment at or before the

23  time of sentencing unless defendant lacks the ability to pay and

24  prior to sentencing submits a completed financial statement on a form

25  to be provided by the USAO.

26          h.   Having been fully advised by defendant's attorney

27  regarding application of the statute of limitations to the offense to

28

                              2

1   which defendant is pleading guilty, defendant hereby knowingly,

2   voluntarily, and intelligently waives, relinquishes, and gives up:

3   (i) any right that defendant might have not to be prosecuted for the

4   offense to which defendant is pleading guilty because of the

5   expiration of the statute of limitations for the offense prior to the

6   filing of the information alleging the offense; and (ii) any defense,

7   claim, or argument defendant could raise or assert that prosecution

8   of the offense to which defendant is pleading guilty is barred by the

9   expiration of the applicable statute of limitations, pre-indictment

10  delay, or any speedy trial violation.

11      3.   Defendant further agrees to cooperate fully with the USAO,

12  the Internal Revenue Service, and, as directed by the USAO, any other

13  federal, state, local, or foreign prosecuting, enforcement,

14  administrative, or regulatory authority.  This cooperation requires

15  defendant to:

16          a.   Respond truthfully and completely to all questions

17  that may be put to defendant, whether in interviews, before a grand

18  jury, or at any trial or other court proceeding.

19          b.   Attend all meetings, grand jury sessions, trials or

20  other proceedings at which defendant's presence is requested by the

21  USAO or compelled by subpoena or court order.

22          c.   Produce voluntarily all documents, records, or other

23  tangible evidence relating to matters about which the USAO, or its

24  designee, inquires.

25      4.   For purposes of this agreement: (a) "Cooperation

26  Information" shall mean any statements made, or documents, records,

27  tangible evidence, or other information provided, by defendant

28

3

15966771.10

1  pursuant to defendant's cooperation under this agreement; and (b)

2  "Plea Information" shall mean any statements made by defendant, under

3  oath, at the guilty plea hearing and the agreed to factual basis

4  statement in this agreement.

DEFENDANT'S OTHER OBLIGATIONS

5

6      5.   Defendant also agrees:

7           a.   Defendant agrees to pay restitution to the Internal

8  Revenue Service in the total amount of $99,944 for the tax years

9  2006-2009, pursuant to 18 U.S.C. § 3663(a)(3).  Defendant understands

10 and agrees that this figure does not include interest under 26 U.S.C.

11 § 6601, which will be assessed by the IRS pursuant to Title 26.

12 Defendant agrees that the total amount of restitution reflected in

13 this agreement results from defendant's fraudulent conduct.

14          b.   The total amount of restitution consists of the

15 following:

16

| Tax Year | Tax Due and Owing |
|----------|-------------------|
| 2006     | $37,162           |
| 2007     | $42,932           |
| 2008     | $16,879           |
| 2009     | $2,971            |
| Total    | $99,944           |

24          c.   Defendant agrees that restitution is due and payable

25 immediately after the judgment is entered and is subject to immediate

26 enforcement, in full, by the United States.  If the Court imposes a

27 schedule of payments, defendant agrees that the schedule of payments

28

4

15966771.10

1   is a schedule of the minimum payment due, and that the payment

2   schedule does not prohibit or limit the methods by which the United

3   States may immediately enforce the judgment in full.

4        d.   The IRS will use the amount of restitution order as

5   the basis for a civil assessment under 26 U.S.C. § 6201(a)(4).

6   Defendant does not have the right to challenge the amount of this

7   restitution-based assessment.   See 26 U.S.C. § 6201(a)(4)(C).

8   Neither the existence of a restitution payment schedule nor the

9   defendant's timely payment of restitution according to that schedule

10  will preclude the IRS from immediately collecting the full amount of

11  the restitution-based assessment.   Interest on the restitution-based

12  assessment will accrue under 26 U.S.C. § 6601 from the last date

13  prescribed for payment of the tax liability that is the subject of

14  the restitution-based assessment to the date that the IRS receives

15  full payment.

16       e.   Defendant is entitled to receive credit for

17  restitution paid pursuant to this plea agreement against those

18  assessed civil tax liabilities due and owing for the same periods for

19  which restitution was ordered.   Defendant understands and agrees that

20  the plea agreement does not resolve the Defendant's civil tax

21  liabilities, that the IRS may seek additional taxes, interest and

22  penalties from Defendant relating to the conduct covered by this plea

23  agreement and for conduct relating to another time period, and that

24  satisfaction of the restitution debt does not settle, satisfy, or

25  compromise Defendant's obligation to pay any remaining civil tax

26  liability.   Defendant authorizes release of information to the IRS

27

28

15966771.10

1  for purposes of making the civil tax and restitution-based

2  assessments.

3          f.    Defendant understands that he is not entitled to

4  credit with the IRS for any payment until the payment is received by

5  the IRS.

6          g.    If full payment cannot be made immediately, defendant

7  agrees to make a complete and accurate financial disclosure to the

8  IRS on forms prescribed by the IRS (including, but not limited to,

9  IRS Form 433-A and Form 433-B, as appropriate), and to disclose to

10 the IRS any and all additional financial information and financial

11 statements provided to the probation office.  Defendant also agrees

12 to provide the above-described information to the probation office.

13         h.    If Defendant makes a payment of the restitution agreed

14 to above prior to sentencing, the payment will be applied as a credit

15 against the restitution ordered pursuant to the above.

16         i.    Defendant agrees to send restitution payments to the

17 IRS at the following address:

18

19     IRS-RACS

20     Attn:  Mail Stop 6261, Restitution

21     333 W. Pershing Avenue

22     Kansas City, MO 64108

23

24         j.    With each payment to the IRS, defendant will provide

25 the following information:

26

27             i.    Defendant's name and Social Security number;

28

6

15966771.10

1          ii.   The District Court and the docket number assigned

2     to the case;

3          iii.  Tax years for which restitution has been

4     ordered;

5          iv.  A statement that the payment is being submitted

6     pursuant to the District Court's restitution order.

7

8          k.   Defendant agrees to send to the Clerk of Court of the

9  District and to the U.S. Attorney's Office Financial Litigation Unit

10  notice of restitution payments sent directly to the IRS.

11         l.   A failure to send restitution payments to the specific

12  IRS address set forth above, or a failure to include all of the

13  information listed above, may result in the IRS applying the payment

14  in the best interest of the United States, including application to

15  taxes or periods other than those identified above.

16         m.   Defendant is liable for the fraud penalty imposed by

17  the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements

18  of tax liability for tax years 2006-2009.

19         n.   Defendant gives up any and all objections that could

20  be asserted to the Examination Division of the Internal Revenue

21  Service receiving materials or information obtained during the

22  criminal investigation of this matter, including materials and

23  information obtained through grand jury subpoenas.

24         o.   That if requested by the IRS, defendant will sign

25  closing agreements with the Internal Revenue Service permitting the

26  Internal Revenue Service to assess and collect his tax liabilities

27  for tax years 2006-2009, as well as assess and collect the civil

28

15966771.10

1    fraud penalty for each year and statutory interest, on the tax

2    liabilities, as provided by law.

3         p.    To repatriate any funds or assets (excluding real and

4    personal property) held in any foreign country or outside the United

5    States.

6         q.    That nothing in this agreement shall preclude or bar

7    the IRS from the assessment and/or collection of any additional tax

8    liability, including interest and penalties, determined to be due and

9    owing from defendant by the IRS for 2004-2013.

10        r.    That, in order to resolve defendant's civil liability

11   for failing to report all foreign financial accounts on Reports of

12   Foreign Bank and Financial Accounts, TD F 90-22.1 (now FinCEN Forms

13   114), and other foreign information reporting obligations under the

14   United States law, for tax years 2004 through 2013, defendant will

15   pay a fifty percent penalty with respect to the funds held in his

16   undeclared foreign financial accounts for the one year with the

17   highest aggregate balance in all of the accounts for calendar years

18   2004 through 2013, and agrees to pay this sum to the United States

19   Treasury, through the United States Department of Justice, Tax

20   Division.

21                        THE USAO'S OBLIGATIONS

22   6.   The USAO agrees to:

23        a.    Not contest facts agreed to in this agreement.

24        b.    Abide by all agreements regarding sentencing contained

25   in this agreement.

26        c.    At the time of sentencing, provided that defendant

27   demonstrates an acceptance of responsibility for the offense up to

28

                              8

                                                    15966771.10

1  and including the time of sentencing, recommend a two-level reduction
2  in the applicable Sentencing Guidelines offense level, pursuant to
3  U.S.S.G. § 3E1.1, and recommend, and if necessary move, for an
4  additional one-level reduction if available under that section.

5            d.    Not to further criminally prosecute defendant for any
6  additional violations known to the USAO at the time of the plea,
7  arising out of the information provided by the defendant, and
8  defendant's conduct (i) described in the Information or (ii)
9  described in the statement of facts provided in Attachment A.
10 Defendant understands that the USAO is free to criminally prosecute
11 defendant for any other unlawful past conduct or any unlawful conduct
12 that occurs after the date of this agreement.  Defendant agrees that
13 at the time of sentencing the Court may consider the uncharged
14 conduct in determining the applicable Sentencing Guidelines range,
15 the propriety and extent of any departure from that range, and the
16 sentence to be imposed after consideration of the Sentencing
17 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

18       7.    The USAO further agrees:

19            a.    Not to offer as evidence in its case-in-chief in the
20 above-captioned case or any other criminal prosecution that may be
21 brought against defendant by the USAO, or in connection with any
22 sentencing proceeding in any criminal case that may be brought
23 against defendant by the USAO, any Cooperation Information.
24 Defendant agrees, however, that the USAO may use both Cooperation
25 Information and Plea Information: (i) to obtain and pursue leads to
26 other evidence, which evidence may be used for any purpose, including
27 any criminal prosecution of defendant; (ii) to cross-examine

28

9

1    defendant should defendant testify, or to rebut any evidence offered,

2    or argument or representation made, by defendant, defendant's

3    counsel, or a witness called by defendant in any trial, sentencing

4    hearing, or other court proceeding; and (iii) in any criminal

5    prosecution of defendant for false statement, obstruction of justice,

6    or perjury.

7         b.    Not to use Cooperation Information, against defendant

8    at sentencing for the purpose of determining the applicable

9    Sentencing Guidelines range, including the appropriateness of an

10   upward departure, or the sentence to be imposed, and to recommend to

11   the Court that Cooperation Information not be used in determining the

12   applicable Sentencing Guidelines range or the sentence to be imposed.

13   Defendant understands, however, that Cooperation Information will be

14   disclosed to the probation office and the Court, and that the Court

15   may use Cooperation Information for the purposes set forth in U.S.S.G

16   § 1B1.8(b) and for determining the sentence to be imposed.

17        c.    In connection with the defendant's sentencing, to

18   bring to the Court's attention the nature and extent of defendant's

19   cooperation.

20        d.    If the USAO determines, in its exclusive judgment,

21   that defendant has both complied with defendant's obligations under

22   this agreement and provided substantial assistance to law enforcement

23   in the prosecution or investigation of another ("substantial

24   assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix

25   an offense level and corresponding guideline range below that

26   otherwise dictated by the Sentencing Guidelines, and to recommend a

27   sentence within this reduced range.  Defendant understands that he

28

                                  10

1   cannot withdraw his plea of guilty if the USAO does not file a motion

2   for a downward departure.   Defendant further understands that the

3   USAO has not made a determination as of this date whether the facts

4   of this case present circumstances deserving of a downward departure.

5       <u>DEFENDANT'S UNDERSTANDINGS REGARDING SUBSTANTIAL ASSISTANCE</u>

6       8.   Defendant understands the following:

7       a.   Any knowingly false or misleading statement by

8   defendant will subject defendant to prosecution for false statement,

9   obstruction of justice, and perjury and will constitute a breach by

10  defendant of this agreement.

11      b.   Nothing in this agreement requires the USAO or any

12  other prosecuting, enforcement, administrative, or regulatory

13  authority to accept any cooperation or assistance that defendant may

14  offer, or to use it in any particular way.

15      c.   Defendant cannot withdraw defendant's guilty plea if

16  the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

17  reduced guideline range or if the USAO makes such a motion and the

18  Court does not grant it or if the Court grants such a USAO motion but

19  elects to sentence above the reduced range.

20      d.   At this time the USAO makes no agreement or

21  representation as to whether any cooperation that defendant has

22  provided or intends to provide constitutes substantial assistance.

23  The decision whether defendant has provided substantial assistance

24  will rest solely within the exclusive judgment of the USAO.

25      e.   The USAO's determination of whether defendant has

26  provided substantial assistance will not depend in any way on whether

27  the government prevails at any trial or court hearing in which

28

                                        11

15966771.10

1  defendant testifies or in which the government otherwise presents

2  information resulting from defendant's cooperation.

3  <u>NATURE OF THE OFFENSES</u>

4      9.    Defendant understands that for defendant to be guilty of

5  the crime charged in count one of the Information, that is, filing a

6  false tax return, in violation of Title 26, United States Code,

7  Section 7206(1), the following must be true:

8      a.    The defendant made, subscribed, signed, and filed with

9  the IRS a 2007 federal U.S. Individual Income Tax Return, Form 1040,

10 which was false as to a material matter, as it falsely stated that

11 the defendant did not have financial interest in or signature

12 authority over any foreign financial accounts, and failed to disclose

13 the income that the defendant received from his foreign financial

14 accounts;

15     b.    The tax return contained a written declaration that it

16 was made under the penalties of perjury;

17     c.    The defendant did not believe the return statement or

18 other document to be true and correct as to every material matter;

19     d.    The defendant falsely subscribed to the tax return

20 willfully, with the specific intent to violate the law.

21     Defendant admits that defendant is, in fact, guilty of the

22 offenses as described in count one of the Information.

23 <u>PENALTIES</u>

24     10.  Defendant understands that the statutory maximum sentence

25 that the Court can impose for a violation of Title 26, United States

26 Code, Section 7206(1), is:  three years' imprisonment; a one-year

27 period of supervised release; a fine of $250,000 or twice the gross

28

                      12

15966771.10

1   gain or gross loss resulting from the offense, whichever is greatest;
2   and a mandatory special assessment of $100.  Defendant agrees to pay
3   the special assessment at or before the time of sentencing.

4       11.  Defendant understands and agrees that the Court: (a) may
5   order defendant to, pay any additional fines that defendant owes to
6   the United States; and (b) must order defendant to pay the costs of
7   prosecution, which may be in addition to the statutory maximum fine
8   stated above.

9       12.  The parties further agree that the tax loss determined for
10  criminal purposes is not binding for civil purposes and is exclusive
11  of civil penalties and interest.

12      13.  Defendant understands that supervised release is a period
13  of time following imprisonment during which defendant will be subject
14  to various restrictions and requirements.  Defendant understands that
15  if defendant violates one or more of the conditions of any supervised
16  release imposed, defendant may be returned to prison for all or part
17  of the term of supervised release authorized by statute for the
18  offense that resulted in the term of supervised release, which could
19  result in defendant serving a total term of imprisonment greater than
20  the statutory maximum stated above.

21      14.  Defendant understands that, by pleading guilty, defendant
22  may be giving up valuable government benefits and valuable civic
23  rights, such as the right to vote, the right to possess a firearm,
24  the right to hold office, and the right to serve on a jury.
25  Defendant understands that once the Court accepts defendant's guilty
26  plea, it will be a federal felony for defendant to possess a firearm
27  or ammunition.  Defendant understands that the conviction in this

28                                13

15966771.10

1   case may also subject defendant to various other collateral
2   consequences, including but not limited to revocation of probation,
3   parole, or supervised release in another case and suspension or
4   revocation of a professional license.  Defendant understands that
5   unanticipated collateral consequences will not serve as grounds to
6   withdraw defendant's guilty plea.

7      15.  Defendant understands that, if defendant is not a United
8   States citizen, the felony conviction in this case may subject
9   defendant to: removal, also known as deportation, which may, under
10  some circumstances, be mandatory; denial of citizenship; and denial
11  of admission to the United States in the future.  The Court cannot,
12  and defendant's attorney also may not be able to, advise defendant
13  fully regarding the immigration consequences of the felony conviction
14  in this case.  Defendant understands that unexpected immigration
15  consequences will not serve as grounds to withdraw defendant's guilty
16  plea.

17                            FACTUAL BASIS
18     16.  Defendant and the USAO agree and stipulate to the statement
19  of facts provided in Attachment A which is attached hereto and
20  incorporated by reference herein.  The statement of facts includes
21  facts sufficient to support a plea of guilty to the charges described
22  in this plea agreement.  It is not meant to be a complete recitation
23  of all facts relevant to the underlying criminal conduct or all facts
24  known to defendant that relate to that conduct.  The parties
25  stipulate that the conduct of defendant referred to in Attachment A
26  hereto violated 26 U.S.C. § 7206(1) as charged in Count One of the
27  Information.
28
                              14

15966771.10

## SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other Section 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate, up to the maximum set by statute for the crime of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. §§ 2T1.1 and 2T4.1(e) |
| Sophisticated Means: | +2 | U.S.S.G. § 2T1.1(b)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1 and 3E1.1(b) |
| Total Offense Level: | 13 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth as Defendant's Obligations under paragraph 2, above, are met.

15

15966771.10

1      Subject to the provisions of paragraph 7 above, defendant and

2   the USAO agree not to seek, argue, or suggest in any way, either

3   orally or in writing, that any other specific offense

4   characteristics, adjustments, or departures relating to the offense

5   level be imposed.  The USAO will agree to a downward adjustment for

6   acceptance of responsibility (and, if applicable, move for an

7   additional level under 3E1.1(b)) only if the conditions set forth in

8   this agreement are met.  Defendant agrees that if, after signing this

9   agreement but prior to sentencing, defendant were to commit an act,

10  or the USAO were to discover a previously undiscovered act committed

11  by defendant prior to signing this agreement, which act, in the

12  judgment of the USAO, constituted obstruction of justice within the

13  meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the

14  enhancement set forth in that section.  Additionally, each party

15  reserves the right to argue, and to dispute the arguments of the

16  other, regarding the applicability of 18 U.S.C. § 3553(a) and other

17  departure factors.

18      19.  Defendant understands that there is no agreement as to

19  defendant's criminal history or criminal history category.

20      20.  The stipulations in this agreement do not bind either the

21  United States Probation Office or the Court.  The Court will

22  determine the facts and calculations relevant to sentencing.  Both

23  defendant and the USAO are free to:  (a) supplement the facts

24  stipulated to in this agreement by supplying relevant information to

25  the United States Probation Office and the Court, (b) correct any and

26  all factual misstatements relating to the calculation of the

27

28
                                   16

                                                        15966771.10

1   sentence, and (c) argue on appeal and collateral review that the

2   Court's sentencing calculations are not error.

3       21.   Defendant understands that if the Court finds facts or

4   reaches conclusions different from those in any stipulation contained

5   in this agreement, defendant cannot, for that reason alone, withdraw

6   defendant's guilty plea.

7                    WAIVER OF CONSTITUTIONAL RIGHTS

8       22.   Defendant understands that by pleading guilty, defendant

9   gives up the following rights:

10          a.   The right to persist in a plea of not guilty.

11          b.   The right to a speedy and public trial by jury.

12          c.   The right to be represented by counsel – and if

13   necessary have the Court appoint counsel – at trial.  Defendant

14   understands, however, that, defendant retains the right to be

15   represented by counsel – and if necessary have the Court appoint

16   counsel – at every other stage of the proceeding.

17          d.   The right to be presumed innocent and to have the

18   burden of proof placed on the government to prove defendant guilty

19   beyond a reasonable doubt.

20          e.   The right to confront and cross-examine witnesses

21   against defendant.

22          f.   The right to testify and to present evidence in

23   opposition to the charges, including the right to compel the

24   attendance of witnesses to testify.

25          g.   The right not to be compelled to testify, and, if

26   defendant chose not to testify or present evidence, to have that

27   choice not be used against defendant.

28
                                 17

1          h.    Any and all rights to pursue any affirmative defenses,

2    Fourth Amendment or Fifth Amendment claims, and other pretrial

3    motions that have been filed or could be filed.

4                    WAIVER OF APPEAL OF CONVICTION

5         23.  Defendant understands that, with the exception of an appeal

6    based on a claim that defendant's guilty pleas were involuntary, by

7    pleading guilty defendant is waiving and giving up any right to

8    appeal defendant's convictions on the offenses to which defendant is

9    pleading guilty.

10             LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

11        24.  Defendant agrees that, provided the Court imposes a term of

12   imprisonment within or below the range corresponding to his total

13   offense level and the criminal history category calculated by the

14   Court, defendant gives up the right to appeal all of the following:

15   (a) the procedures and calculations used to determine and impose any

16   portion of the sentence; (b) the term of imprisonment imposed by the

17   Court; (c) the amount and terms of any restitution order, and any

18   fine imposed by the Court, provided it is within the statutory

19   maximum; (d) the term of probation or supervised release imposed by

20   the Court, provided it is within the statutory maximum; and (e) any

21   of the following conditions of probation or supervised release

22   imposed by the Court:  the standard conditions set forth in General

23   Orders 318, 01-05 and/or 05-02 of this Court; the drug testing

24   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

25   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26        25.  The USAO agrees that, provided (a) all portions of the

27   sentence are at or below the statutory maximum specified above, (b)

28                                    18

15966771.10

1   the Court calculates the offense level to be used for selecting a

2   sentencing range under the Sentencing Guidelines to be at or above

3   the range determined by the government, prior to any departure under

4   U.S.S.G. § 5K1.1, and (c) the Court imposes a term of imprisonment

5   within or above the range corresponding to the offense level

6   calculated after any downward departure under U.S.S.G. § 5K1.1 and

7   the criminal history category calculated by the Court, the USAO gives

8   up its right to appeal any portion of the sentence.

9                    RESULT OF WITHDRAWAL OF GUILTY PLEA

10        26.   Defendant agrees that if, after entering guilty pleas

11   pursuant to this agreement, defendant seeks to withdraw and succeeds

12   in withdrawing defendant's guilty pleas on any basis other than a

13   claim and finding that entry into this plea agreement was

14   involuntary, then (a) the USAO will be relieved of all of its

15   obligations under this agreement, including in particular its

16   obligations regarding the use of Cooperation Information; (b) in any

17   investigation, criminal prosecution, or civil, administrative, or

18   regulatory action, defendant agrees that any Cooperation Information

19   and any evidence derived from any Cooperation Information shall be

20   admissible against defendant, and defendant will not assert, and

21   hereby waives and gives up, any claim under the United States

22   Constitution, any statute, or any federal rule, that any Cooperation

23   Information or any evidence derived from any Cooperation Information

24   should be suppressed or is inadmissible; and (c) should the USAO

25   choose to pursue any charge or any civil, administrative, or

26   regulatory action that was either dismissed or not filed as a result

27   of this agreement, then (i) any applicable statute of limitations

28
                                     19

15966771.10

1  will be tolled between the date of defendant's signing of this

2  agreement and the filing commencing any such action; and

3  (ii) defendant waives and gives up all defenses based on the statute

4  of limitations, any claim of pre-indictment delay, or any speedy

5  trial claim with respect to any such action, except to the extent

6  that such defenses existed as of the date of defendant's signing this

7  agreement.

8                    EFFECTIVE DATE OF AGREEMENT

9       27.  This agreement is effective upon signature and execution of

10  all required certifications by defendant, defendant's counsel, and an

11  Assistant United States Attorney.

12                    BREACH OF AGREEMENT

13      28.  Defendant agrees that if defendant, at any time after the

14  signature of this agreement and execution of all required

15  certifications by defendant, defendant's counsel, and a prosecutor,

16  knowingly violates or fails to perform any of defendant's obligations

17  under this agreement ("a breach"), the USAO may declare this

18  agreement breached.  For example, if defendant knowingly, in an

19  interview, before a grand jury, or at trial, falsely accuses another

20  person of criminal conduct or falsely minimizes defendant's own role,

21  or the role of another, in criminal conduct, defendant will have

22  breached this agreement.  All of defendant's obligations are

23  material, a single breach of this agreement is sufficient for the

24  USAO to declare a breach, and defendant shall not be deemed to have

25  cured a breach without the express agreement of the USAO in writing.

26  If the USAO declares this agreement breached, and the Court finds

27  such a breach to have occurred, then:

28
                              20

1        a.    If defendant has previously entered a guilty plea
2   pursuant to this agreement, defendant will not be able to withdraw
3   the guilty plea.
4        b.    The USAO will be relieved of all its obligations under
5   this agreement; in particular, the USAO: (i) will no longer be bound
6   by any agreements concerning sentencing and will be free to seek any
7   sentence up to the statutory maximum for the crimes to which
8   defendant has pleaded guilty; (ii) will no longer be bound by any
9   agreements regarding criminal prosecution, and will be free to
10  criminally prosecute defendant for any crime, including charges that
11  the USAO would otherwise have been obligated not to criminally
12  prosecute pursuant to this agreement; and (iii) will no longer be
13  bound by any agreement regarding the use of Cooperation Information
14  and will be free to use any Cooperation Information in any way in any
15  investigation, criminal prosecution, or civil, administrative, or
16  regulatory action.
17       c.    The USAO will be free to criminally prosecute
18  defendant for false statement, obstruction of justice, and perjury
19  based on any knowingly false or misleading statement by defendant.
20       d.    In any investigation, criminal prosecution, or civil,
21  administrative, or regulatory action: (i) defendant will not assert,
22  and hereby waives and gives up, any claim that any Cooperation
23  Information was obtained in violation of the Fifth Amendment
24  privilege against compelled self-incrimination; and (ii) defendant
25  agrees that any Cooperation Information and any Plea Information, as
26  well as any evidence derived from any Cooperation Information or any
27  Plea Information, shall be admissible against defendant, and
28

                                   21

                                                            15966771.10

1  defendant will not assert, and hereby waives and gives up, any claim

2  under the United States Constitution, any statute, Rule 410 of the

3  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

4  Criminal Procedure, or any other federal rule, that any Cooperation

5  Information, any Plea Information, or any evidence derived from any

6  Cooperation Information or any Plea Information should be suppressed

7  or is inadmissible.

8     29.  Following the Court's finding of a knowing breach of this

9  agreement by defendant, should the USAO choose to pursue any charge

10  or any civil, administrative, or regulatory action that was either

11  dismissed or not filed as a result of this agreement, then:

12        a.  Defendant agrees that any applicable statute of

13  limitations is tolled between the date of defendant's signing of this

14  agreement and the filing commencing any such action.

15        b.  Defendant waives and gives up all defenses based on

16  the statute of limitations, any claim of pre-indictment delay, or any

17  speedy trial claim with respect to any such action, except to the

18  extent that such defenses existed as of the date of defendant's

19  signing this agreement.

20  <u>COURT AND PROBATION OFFICE NOT PARTIES</u>

21     30.  Defendant understands that the Court and the United States

22  Probation Office are not parties to this agreement and need not

23  accept any of the USAO's sentencing recommendations or the parties'

24  agreements to facts or sentencing factors.

25     31.  Defendant understands that both defendant and the USAO are

26  free to:  (a) supplement the facts by supplying relevant information

27  to the United States Probation Office and the Court; (b) correct any

28

22

15966771.10

1   and all factual misstatements relating to the Court's Sentencing

2   Guidelines calculations, and (c) argue on appeal and collateral

3   review that the Court's Sentencing Guidelines calculations are not in

4   error.   While this paragraph permits both the USAO and defendant to

5   submit full and complete factual information to the United States

6   Probation Office and the Court, even if that factual information may

7   be viewed as inconsistent with the facts agreed to in this agreement,

8   this paragraph does not affect defendant's and the USAO's obligations

9   not to contest the facts agreed to in this agreement.

10       32.   Defendant understands that even if the Court ignores any

11  sentencing recommendation, finds facts, or reaches conclusions

12  different from those agreed to, and/or imposes any sentence up to the

13  maximum established by statute, defendant cannot, for that reason,

14  withdraw defendant's guilty plea, and defendant will remain bound to

15  fulfill all defendant's obligations under this agreement.   Defendant

16  understands that no one — not the prosecutor, defendant's attorney,

17  or the Court — can make a binding prediction or promise regarding the

18  sentence defendant will receive, except that it will be within the

19  statutory maximum.

20              NO ADDITIONAL AGREEMENTS

21       33.   Defendant understands that, except as set forth herein,

22  there are no promises, understandings, or agreements between the USAO

23  and defendant or defendant's attorney, and that no additional

24  promise, understanding, or agreement may be entered into unless in a

25  writing signed by all parties or on the record in court.

26

27

28

15966771.10

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2       34.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    NICOLA T. HANNA
     United States Attorney

9

10   _____          _8/28/18_____
     ROBERT F. CONTE                           Date
11   Assistant United States Attorney
     Deputy Chief, Tax Division

12

13   UNITED STATES DEPARTMENT OF JUSTICE
     TAX DIVISION

14

15   RICHARD E. ZUCKERMAN
     Principal Deputy Assistant Attorney
     General

16
     _____          _8/28/18_____
17   ELIZABETH C. HADDEN                       Date
     Assistant Chief
18   ERIC C. SCHMALE
     Trial Attorney

19

20

21

22

23

24

25

26

27

28

                                    24

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
ELIE WAKNINE                              Date
Defendant

6·19·2018

25

15966771.10

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ELIE WAKNINE'S attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     10/20/2018
EVAN DAVIS                          Date
Attorney for Defendant ELIE
WAKNINE

26

15966771.10

1
2

## ATTACHMENT A

## STATEMENT OF FACTS

3    1.    ELIE WAKNINE, ("Waknine" or "the defendant") was born in
4    Casablanca, Morocco in 1949.  From in or about 1966 to 1971, Waknine
5    lived in Israel.  Waknine then immigrated to the United States in
6    1971 and became a U.S. citizen in 1982.  Waknine is a citizen of the
7    United States, Morocco, and Israel.

8    2.    From in or about 1972 until 1985, Waknine worked for an
9    electronics company.  From in or about 1985 until 2004, Waknine
10   operated his own clothing business, and from in or about 1995 through
11   2003, Waknine also worked in a dental supply business.  From in or
12   about 2004 through approximately 2011, Waknine was retired but
13   continued to do limited work in the clothing business.

14   3.    Since in or about 1991, Waknine has lived in Huntington
15   Beach, California, which is located in the Central District of
16   California.

17        Waknine's Unreported Foreign Bank Accounts (1994-2011)

18   4.    In or about 1994, Waknine received an inheritance from his
19   family in Morocco, which he used to open a bank account at Bank Leumi
20   in Israel (the "Bank Leumi Israel Account").  He opened the account
21   with an initial deposit of approximately $50,000.  For the next
22   several years, he deposited additional inheritance money in the
23   account, with deposits totaling approximately $4 million.

24   5.    Waknine concealed his Bank Leumi Israel Account, and the
25   income derived from this account, from the Internal Revenue Service
26   (IRS) and from his tax return preparers at all times prior to the
27   closing of this account in 2011, including through the following:

28

27

15966771.10

1        a. Waknine opened and maintained the account using the code

2           name "Jonathan Co." for purposes of keeping the account

3           secret.

4        b. Waknine paid an additional fee so that Bank Leumi Israel

5           would not mail correspondence to him in the U.S. regarding

6           his account, known as the "Hold Mail" option.

7        c. Waknine signed under penalty of perjury and filed false

8           individual income tax returns, Forms 1040, which falsely

9           claimed that Waknine did not have a financial interest in

10          or signature authority over a financial account located in

11          a foreign country and did not declare income derived from

12          his Bank Leumi Israel Account.

13       d. Annually, Waknine provided bank account records to his tax

14          return preparer, but did not provide records from or notify

15          his return preparer of his Bank Leumi Israel account.

16    6.    In or about 2004, Waknine opened a second foreign bank

17 account at Swiss Bank #1 located in Switzerland (the "Swiss Bank

18 Account"), funded with approximately $1.5-2.0 million from his Bank

19 Leumi Israel Account.

20    7.    Waknine concealed his Swiss Bank Account, and the income

21 derived from this account, from the IRS and from his tax return

22 preparers at all times prior to the closing of this account in or

23 about 2011, including through the following:

24

25

26

27

28

15966771.10

1          a. Waknine signed blank account opening documents on the

2              instructions of Swiss Bank #1, which the bank then used to

3              open and maintain his account using an entity name, "Sorn

4              Investments Inc.," which was an entity incorporated in

5              Panama through a Panamanian law firm.

6          b. Waknine requested that Swiss Bank #1 not mail

7              correspondence to him in the U.S. regarding his account,

8              known as the "Hold Mail" option.

9          c. Waknine signed under penalty of perjury and filed false

10             individual income tax returns, Forms 1040, which falsely

11             claimed that Waknine did not have a financial interest in

12             or signature authority over a financial account located in

13             a foreign country and did not declare income derived from

14             his Swiss Bank Account.

15          d. Annually, Waknine provided bank account records to his tax

16             return preparer, but did not provide records from or notify

17             his return preparer of his Swiss Bank Account.

18       8.    On or about April 15, 2008, Waknine made, subscribed,

19 signed, and filed a 2007 federal U.S. Individual Income Tax Return,

20 Form 1040, which was false as to a material matter, as it falsely

21 stated that the defendant did not have financial interest in or

22 signature authority over any foreign financial accounts, and failed

23 to disclose the income that the defendant received from his foreign

24 financial accounts.  The false 2007 tax return contained a written

25 declaration that it was made under the penalties of perjury, the

26 defendant did not believe the tax return to be true and correct as to

27 every material matter, and the defendant willfully subscribed to the

28

15966771.10

1  tax return with the specific intent to violate the law.

2      9.  A "back-to-back loan" was a mechanism by which a foreign

3  accountholder received a "loan" in the United States which was

4  collateralized by an undeclared foreign account.  Account holders

5  were generally prohibited from drawing down the account below the

6  amount owed on the "loan" in the United States, thereby in effect

7  transferring the use of the funds from the foreign account to the

8  United States without having to wire the funds to an account in the

9  United States.  The foreign account balance would include the

10  encumbered funds, even though they were not available to the US

11  taxpayer, except in the form of the "loan" in the United States.

12  This allowed an owner of an undeclared foreign account to enjoy the

13  economic benefits of the funds in the United States without formally

14  repatriating the funds or creating a paper trail that could

15  potentially disclose the existence of the undeclared foreign account

16  to U.S. authorities.

17      10.  In 2009, at the suggestion of Bank Leumi Israel, Waknine

18  applied for and received a back-to-back loan from Bank Leumi USA in

19  the amount of $500,000, which was secured by Waknine's account at

20  Bank Leumi Israel.  In order to secure the loan, Waknine agreed to

21  transfer approximately $150,000 of his investment portfolio with

22  another United States bank to Bank Leumi USA.

23      11.  The proceeds of the back-to-back loan were used to pay off

24  $500,000 of a mortgage loan on Waknine's personal residence at

25  another bank in the United States.

26      12.  In 2010, Waknine extended his back-to-back loan with Bank

27  Leumi USA through July 2012.

28

1596697).10

13.   In June 2011, Bank Leumi Israel informed Waknine that he would no longer be able to maintain his account under the code name Jonathan Co.

14.   In September 2011, Waknine declined to sign a declaration provided by Bank Leumi Israel stating that the existence of, and any income derived from, the account maintained at Bank Leumi Israel had been properly reported to U.S. tax authorities.

15.   In November 2011, Waknine requested that his Bank Leumi Israel account be closed.  Waknine used the back-to-back loan from Bank Leumi USA to indirectly repatriate $500,000 from his Bank Leumi Israel account by pocketing the proceeds of the loan in the United States and allowing Bank Leumi Israel to deduct a corresponding amount from his Bank Leumi Israel account.

16.   Waknine attempted to conceal the remaining account balance of approximately $2.4 million by requesting in writing that it be transferred by personal checks to Waknine's home address in the United States.

17.   From 2006-2011, Waknine received unreported income on his Bank Leumi Israel account in approximately the following amounts:

| Year | Bank Leumi Israel Income |
|------|--------------------------|
| 2006 | $140,892 |
| 2007 | $157,824 |
| 2008 | $119,980 |
| 2009 | $63,449 |

15966771.10

| Year | Bank Leumi Israel Income |
|------|--------------------------|
| 2010 | $13,205[1] |
| 2011 | $10,946[2] |
| **TOTAL** | **$506,296** |

## Waknine's Unreported Foreign Bank Accounts (2011-2015)

18.   Still wishing to avoid disclosure of the foreign funds from his now-closed Bank Leumi Israel account, in December 2011 Waknine used the $2.4 million he received from closing the account to open a new foreign bank account at another bank in Israel (the "Second Israeli Bank Account").  Waknine opened the account in person at a branch in Netanya, Israel.

19.   Waknine concealed this Second Israeli Bank Account from the IRS and from his tax return preparers from its opening until in or about October 2015, including through the following affirmative acts:

> a. Waknine opened and maintained the account using his Israeli
>    and Moroccan passports and addresses.

> b. Waknine signed under penalty of perjury and filed
>    individual income tax returns, Forms 1040, for tax years
>    2011-2013, which falsely claimed that Waknine did not have
>    a financial interest in or signature authority over a
>    financial account located in a foreign country.  These tax
>    returns did not declare any income derived from his Second

_____

[1] Based on information currently available to the IRS, the unreported Bank Leumi Israel income for 2010 did not result in a tax loss for 2010.

[2] Based on the information currently available to the IRS, the unreported Bank Leumi Israel income for 2011 did not result in a tax loss for 2011.

15966771.10

1       Israeli Bank Account.

2           c. In 2012 and 2014, documents created by his tax return

3             preparer reflect that Waknine was asked by his tax return

4             preparer whether he had any foreign bank accounts, and

5             Waknine responded in the negative.

6           d. Annually, Waknine provided bank account records to his tax

7             return preparer, but did not provide records from or notify

8             his return preparer of his Second Israeli Bank Account.

9           e. In 2012, 2013, and 2015, Waknine's tax return preparer also

10            provided email reminders prior to the June 30 deadline that

11            foreign bank accounts for the prior year were required by

12            law to be disclosed to the U.S. Treasury Department.

13          f. When Waknine ultimately disclosed the account to his tax

14            return preparer at a meeting in October 2015, notes of the

15            meeting taken by the tax return preparer reflect that

16            Waknine claimed that his name was not on the account prior

17            to 2014.

18      20.   Meanwhile, in approximately 2011, Waknine closed his Swiss

19   Bank Account.   Still wishing to avoid disclosure of the foreign funds

20   from his now closed Swiss Bank account, in 2011 Waknine used the

21   remaining balance of approximately $1.4 million to open an account at

22   a bank in France (the "French Bank Account").

23      21.   Waknine concealed this French Bank Account from the IRS and

24   from his tax return preparers from its opening until in or about

25   October 2015, including through the following:

26          a. Waknine opened and maintained the account using his

27            Moroccan address and passport.

28

                              33

                                                          15966771.10

1       b. Waknine signed under penalty of perjury and filed

2         individual income tax returns, Forms 1040, for tax years

3         2011-2013, which falsely claimed that Waknine did not have

4         a financial interest in or signature authority over a

5         financial account located in a foreign country.  These tax

6         returns did not declare any income derived from his French

7         Bank Account.

8       c. In 2012 and 2014, documents created by his tax return

9         preparer reflect that Waknine was asked by his tax return

10        preparer whether he had any foreign bank accounts, and

11        Waknine responded in the negative.

12      d. Annually, Waknine provided bank account records to his tax

13        return preparer, but did not provide records from or notify

14        his return preparer of his French Bank Account.

15      e. In 2012, 2013, and 2015, Waknine's tax return preparer also

16        provided email reminders prior to the June 30 deadline that

17        foreign bank accounts for the prior year were required by

18        law to be disclosed to the U.S. Treasury Department.

19      f. When Waknine ultimately disclosed the account to his tax

20        return preparer in October 2015, contemporaneous notes

21        taken by the tax return preparer reflect that Waknine

22        claimed that his name was not on the account prior to 2014.

15966771.10

# EXHIBIT B

## FBAR Agreement

Elie Waknine (SSN ████-0510) of █████████ Huntington Beach, California ████
and the Commissioner of Internal Revenue ("Commissioner") (collectively, the "Parties")
make the following agreement:

1. Elie Waknine had U.S. reporting and filing requirements for his foreign accounts and
   failed to file Forms TD F 90-22.1 or FINCEN Forms 114, Report of Foreign Bank and
   Financial Accounts (FBAR), for the calendar years 2004 through 2013, as required by
   law.

2. Elie Waknine wants to resolve, on terms acceptable to the Commissioner, his liability for
   penalties under 31 U.S.C. section 5321(a)(5) attributable to his failure to timely file
   FBARs for the calendar years 2004 through 2013, as required by law.

3. The parties have resolved Elie Waknine's liability for penalties under 31 U.S.C. section
   5321(a)(5) for the calendar years 2004 through 2013.

4. The parties have determined that it is mutually advantageous for them to enter into this
   agreement.

5. Elie Waknine acknowledges that this agreement is entered into voluntarily and not as a
   result of coercion or duress.

6. The Commissioner has authority arising under Title 31 of the United States Code to
   impose penalties relating to the failure to file FBARs. The authority has been granted
   to the Commissioner by the Financial Crimes Enforcement Network (FinCEN)
   through a Memorandum of Agreement and through a Delegation of Authority for
   Enforcement of FBAR Requirements under Title 31, including the authority to assess
   and collect civil penalties under 31 U.S.C. section 5321.

7. The parties agree that there is a penalty due from Elie Waknine under 31 U.S.C.
   section 5321(a)(5) in the amount of **$2,407,624** for failure to file FBARs for calendar
   years 2004 through 2013.

8. The parties agree that the 31 U.S.C. section 5321(a)(5) penalty due from Elie
   Waknine, which shall be assessed for calendar year 2007, is beneath the statutory
   maximum of the amount of penalty authorized under 31 U.S.C. section 5321(a)(5).

FBAR Agreement
with Elie Waknine (SSN ███-0510)

9. Elie Waknine waives any and all defenses to the assessment and collection of the
   FBAR penalty under Title 31 of the United States Code described in the preceding
   paragraph, including any defense based on the expiration of the period of limitations
   on the assessment or collection of penalties and interest.

Taxpayer signature.................................Date Signed...5-19-2019

Representative.........................................Date Signed...5/13/2019

Commissioner of Internal Revenue

By.........................................................Date Signed...8-15-2019

Title...Technical Services Group Manager

Page 2 of 2